UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



FILED
DEC 21 2018
Clerk, U.S. District and
Bankruptcy Courts

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 18-0117 (PLF) |
| ) | |
| DERRICK WILLS, ) | |
| ) | |
| Defendant. ) | |

## OPINION

This matter is before the Court on the government's motion in limine to admit an eyewitness statement as a present-sense impression [Dkt. No. 18]. The defendant filed an opposition to the motion [Dkt. No. 39], the government filed a reply [Dkt. No. 40], and the Court heard oral argument on November 5, 2018. For the reasons that follow, the Court granted the government's motion by separate order dated December 12, 2018 [Dkt. No. 43]. It will admit the statement of the non-testifying anonymous civilian declarant at trial as a present-sense impression under Rule 803(1) of the Federal Rules of Evidence.[1]

## I. FACTUAL BACKGROUND

Derrick Wills is facing trial on the one remaining count of the original three-count indictment, possession of a firearm by a prior convicted felon in violation of 18 U.S.C.

---

[1] The Court has reviewed the following filings in resolving the pending motion: Government's Motion In Limine to Admit Eyewitness Statement as a Present-Sense Impression ("Mot.") [Dkt. No. 18]; Defendant's Opposition to the Government's Motion In Limine ("Opp.") [Dkt. No. 39]; Government's Reply to the Defendant's Opposition ("Gov't Reply") [Dkt. No. 40]; and Government's Exhibit 4, Officer Keleman's Body-worn Camera Footage ("Mot. Ex. 4").

§ 922(g)(1). See Opp. at 1 n.1. The facts surrounding the seizure of the weapon and the arrest of Mr. Wills on February 9, 2018 are explained in detail in the Court's opinion of August 8, 2018 suppressing evidence in this case. See United States v. Wills, 316 F. Supp. 3d 437 (D.D.C. 2018). Only those additional facts specifically relevant to the instant motion in limine are included herein.

In support of its motion, the government relies primarily upon a portion of body-worn camera ("BWC") footage from an officer at the scene of Mr. Wills' arrest, Officer Cornel Keleman. See Mot. at 2 n.2; see also Mot. Ex. 4. The government explains that this footage depicts Officer Keleman's "limited interaction" with an "anonymous civilian witness" who briefly spoke to Officer Keleman while other officers searched for the handgun allegedly thrown by defendant Derrick Wills. See Mot. at 2 n.2. The portion of Officer Keleman's BWC footage with audio begins at 4:57:08 p.m. and shows Officer Keleman walking toward and then up a staircase of the apartment building breezeway through which Mr. Wills allegedly ran. See Mot. Ex. 4.[2] Officer Keleman is seen walking to the second floor and then knocking on the door of a second floor apartment. See id. As Officer Keleman knocks, someone off-screen calls out to get his attention. See id. Officer Keleman turns in response and says "he what?". See id. At that point, the declarant says something to Officer Keleman as she walks toward him, coming up the stairs. See id. The government submits that Exhibit 4, Officer Keleman's BWC footage, indicates that the declarant stated: "[H]e threw it in the bushes I seen him . . . he threw it to the

---

[2] The BWC footage indicates that the hour of recording is "21," not "4" as the government reports. See Mot. Ex. 4. To maintain consistency with the government's timeline, and given that it is still daytime during the footage, the Court will assume that Officer Keleman's BWC footage should indicate the time to be the hour "4." This inconsistency is inconsequential to this opinion because the Court's analysis turns on the length of time that elapsed – a matter of minutes and seconds, not hours – which are accurately documented on the BWC footage.

right don't talk to me." See Gov't Reply at 2. The anonymous witness continues walking. See Mot. Ex. 4.

Mr. Wills disputes this rendition of the events depicted on the BWC footage. He maintains that the audio from Officer Keleman's BWC indicates that the anonymous civilian witness stated: "He threw it in the bushes. I was sitting there w... He threw it to the right. Don't talk to me." See Opp. at 3 & n.2. According to Mr. Wills, the declarant did not say "I seen him."

This interaction between Officer Keleman and the anonymous civilian witness occurred from approximately 4:57:56 p.m. to 4:58:04 p.m., a period of about eight seconds. See Mot. Ex. 4. According to the government, the interaction at issue took place between three and four minutes after Mr. Wills allegedly threw the firearm. See Mot. at 2. The government submits that the timeline on the body worn camera of another officer, Officer Krishaon Ewing, the pursuing officer, shows that the defendant threw the firearm at 4:54:56 p.m, and the firearm was recovered from the bushes at approximately 4:58:18 p.m. See id. at 1-2. Thus, the lapse of time from the throwing of the gun until its recovery was approximately 3 minutes and 22 seconds; the time between the throwing of the gun and the statement of the anonymous civilian was approximately 3 minutes.

The government now seeks to admit the anonymous civilian witness' statements. It contends that the statements meet both a hearsay exception as a present-sense impression and are non-testimonial, and therefore their admission does not violate Mr. Wills' rights under the Confrontation Clause. See Mot. at 3. Mr. Wills opposes the admission of the statements, arguing that they "do not meet the requirements for admission as present sense impressions and

3

the admission of the statements would violate Mr. Wills' Sixth Amendment right to confrontation." See Opp. at 4.

## II. PRESENT-SENSE IMPRESSION

### *A. Legal Standard*

The Federal Rules of Evidence define hearsay as an out-of-court statement offered for the truth of the matter asserted. See Fed. R. Ev. 801. Although hearsay is generally not admissible, see FED. R. EVID. 802, a present-sense impression may be admitted as an exception to the hearsay rule under Rule 803(1) of the Federal Rules of Evidence. See FED. R. EVID. 803(1); see also Partido Revolucionario Dominicano v. Partido Revolucionario Dominicano, 311 F. Supp. 2d 14, 16 (D.D.C. 2004). Rule 803(1) defines a present-sense impression as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." See FED. R. EVID. 803(1). The hearsay exception applies "regardless of whether the declarant is available as a witness." See id. The exception is grounded in the idea that "statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." See Navarette v. California, 572 U.S. 393, 400 (2014) (internal quotations omitted).

The Advisory Committee Note to Rule 803(1) makes clear that this exception is of limited scope, applying only where there is "substantial contemporaneity of event and statement." See FED. R. EVID. 803 advisory committee's note. The exception recognizes "that in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." See id.; see also Partido Revolucionario Dominicano v. Partido Revolucionario Dominicano, 311 F. Supp. 2d at 16-17 ("The 'critical element' of the exception . . . is

contemporaneity."). Spontaneity is also "a key factor." See FED. R. EVID. 803 advisory committee's note; see also United States v. Obayogbona, 627 F. Supp. 329, 339 (E.D.N.Y. 1985) ("For present sense impressions, the spontaneity exists in the short time between the event perceived and the declaration."). In addition, the "[p]ermissible subject matter" of a present-sense impression is "limited . . . to description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther." See FED. R. EVID. 803 advisory committee's note.

For the Court to admit the proffered statement of the anonymous civilian witness as a present-sense impression, the government must prove three elements: (1) the statement describes or explains an event or condition, (2) which the declarant perceived firsthand, and (3) the statement was made contemporaneously – while the declarant perceived the event or condition or immediately thereafter. See FED. R. EVID. 803(1); see also United States v. Ruiz, 249 F.3d 643, 646 (7th Cir. 2001); United States v. Mitchell, 145 F.3d 572, 576 (2d Cir. 1998); United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D. N.Y. 1994). These elements must be proven by a preponderance of the evidence. See Gilmore v. Palestinian Interim Self-Gov't Auth., 53 F. Supp. 3d 191, 201 (D.D.C. 2014), aff'd, 843 F.3d 958 (D.C. Cir. 2016); see also United States v. Hsia, 87 F. Supp. 2d 10, 13 (D.D.C. 2000) ("As the party seeking to introduce hearsay evidence, the government has the burden of proving each element of the exceptions it asserts.").

*B. Analysis*

The government contends that the anonymous witness' statement should be admitted at trial because it qualifies as a present-sense impression under Rule 803(1) of the Federal Rules of Evidence, and is thereby excepted from the rule against hearsay. See

Mot. at 1, 6. In contrast, Mr. Wills argues that the government has failed to prove by a preponderance of the evidence each of the essential elements necessary to permit admission of the anonymous witness' statement as a present-sense impression.

First, Mr. Wills maintains that the statement does not describe the event or condition in question. He argues that there is no evidence to prove that it was a gun that the anonymous witness saw thrown, as opposed to some other unknown object, or even that the witness was referring to Mr. Wills when she said "[h]e threw it in the bushes." See Opp. at 3-4, 6-7. This argument borders on the frivolous. Although there were other persons in the area, there is no evidence or suggestion that anyone other than Mr. Wills had thrown anything – a firearm or any other object – during the approximately four minutes at issue here. And while the witness was reluctant to speak to law enforcement and promptly left the scene without identifying herself, she spontaneously provided a statement that she saw a person throw something that was of serious concern to her into the bushes.

Second, Mr. Wills argues that there is no evidence that the declarant herself perceived the event or condition firsthand – specifically, that there is no evidence that the anonymous civilian personally saw something as opposed to merely "reporting what someone else saw," and no evidence of where she was when she claims to have seen something. See Opp. at 3, 5-7. In the Court's view, however, there is no doubt that the declarant perceived the event personally. Having viewed and listened to the audio of Officer Keleman's body-worn camera (Exhibit 4) numerous times – and having slowed the recording down to hear the audio clearly – the Court finds as a fact that the anonymous civilian actually said: "He threw it in the bushes. I was sitting there watching. He threw it to the right. Don't talk to me." See Mot. Ex. 4. Thus, while she did not say "I seen him," she did say "I was sitting there watching," and "he threw it in

6

the bushes ... he threw it to the right." The clear inference is that she was watching and, while watching, she saw him throw it in the bushes.[3] It could hardly be clearer that this anonymous civilian personally saw someone – a male – throw something in the bushes that gave her a sufficient level of concern to stop a police officer and spontaneously and immediately report what she had seen. Her statement a fortiori constitutes a report of the first-hand personal perception of an event she had just seen.

Mr. Wills further argues that the fact that the Court knows nothing about the civilian witness – that she was and remains anonymous – raises heightened concerns about her ability to perceive and her reliability. See Opp. at 3-4, 9-10. Some courts have been hesitant to admit the present-sense impression of an unidentified declarant where the declarant's capacity to observe cannot be substantiated, corroborated, or attacked on cross-examination. See FED. R. EVID. 803 advisory committee's note ("[W]hen declarant is an unidentified bystander, the cases indicate hesitancy in upholding the statement alone as sufficient."); see also Miller v. Keating, 754 F.2d 507, 510-11 (3d Cir. 1985); Gainer v. Wal-Mart Stores E., L.P., 933 F. Supp. 2d 920, 929-30 (E.D. Mich. 2013). "[B]ut the truth is that [Rule 803(1)] does not condition admissibility on the availability of corroboration." See United States v. Ruiz, 249 F.3d at 647; United States v. McElroy, 587 F.3d 73, 85 (1st Cir. 2009); see also Silas v. Target Corp., 569 Fed. App'x 405, 407 (6th Cir. 2014) (finding that an unidentified woman's personal knowledge was apparent from her statement for purposes of Rule 803); United States v. Johnson, 509 Fed. App'x 487, 494 (6th Cir. 2012) (concluding that the district court properly admitted the recording of an anonymous 911 call under Rule 803(1) without reference to the need for corroboration). As the Seventh Circuit has correctly concluded, the lack of a corroborating witnesses "[bears] upon the

---

[3] And as Yogi Berra famously said: "You can observe a lot just by watching."

7

weight owed to this evidence but [does] not bar its admission." United States v. Ruiz, 249 F.3d at 647. In any event, here the officers' discovery of a firearm in the bushes moments later itself provides corroboration of the declarant's statement. Furthermore, and importantly, the footage from Officer Keleman's body-worn camera is itself corroboration. Indeed, it is virtually conclusive proof that what Officer Keleman said previously – and presumably will say at trial – about his encounter with the anonymous civilian witness and what she said to him is substantially accurate. Thus, the Court does not find the declarant's anonymity a basis for excluding the statement as hearsay.[4]

Finally, Mr. Wills argues that the statements were not made while the declarant perceived the event or condition or "immediately after the declarant perceived it." See FED. R. EVID. 803(1); Mot. at 7-9. Courts have not strictly required that a present-sense impression be made at the exact moment of the described event, as even the most basic cognitive processing requires some delay. See, e.g., 30B CHARLES A. WRIGHT & JEFFREY BELLIN, FEDERAL PRACTICE & PROCEDURE § 6814 (2017); FED. R. EVID. Rule 803 advisory committee's note ("[I]n many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is

---

[4] The primary cases cited by the defendant on this issue – United States v. Mitchell, 145 F.3d 572 (3d Cir. 1998), and Miller v. Keating, 754 F.2d 507 (3d Cir. 1985) – are distinguishable. Mitchell dealt with an anonymous note left by someone that provided no context that would allow the police to determine whether the writer of the note actually observed – that is, personally perceived – the events in question. See United States v. Mitchell, 145 F.3d at 576-77. The Third Circuit found that the district court erred in admitting the anonymous note in Mitchell because the record was "devoid of circumstances indicating by a preponderance that the author of the anonymous note actually saw [the event it was describing.]" See id. at 577. Similarly, in Miller, the Third Circuit "found the trial court erred in inferring personal perception on the ground that the declarant would have made the declaration only if he was in a position to [personally observe]." See id. at 577 (citing Miller v. Keating, 754 F.2d at 511). Here, the circumstances are entirely different because – as noted – the body-worn camera footage provides the context that was missing in both Mitchell and Miller. The anonymous civilian is heard stating: "He threw it in the bushes. I was sitting there watching." See Mot. Ex. 4.

allowable."). But contemporaneity or substantial contemporaneity is important because it serves as a proxy for reliability or trustworthiness. See United States v. Green, 556 F. 3d 151, 155-56 (3d Cir. 2009) ("[T]he passage of time – or the lack thereof – is the effective proxy for the reliability of the substance of the declaration."). The theory is that (1) "the closeness in time between the perceived event and the declarant's description virtually eliminates dangers of faulty memory," and (2) "the absence of an opportunity for reflection reduces 'the likelihood of deliberate or conscious misrepresentation.'" See WRIGHT & BELLIN, supra, § 6812 (quoting FED. R. EVID. 803 advisory committee's note); see also Navarette v. California, 572 U.S. at 399-400; United States v. Ruiz, 249 F.3d at 647 ("[S]ubstantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication."); United States v. Mejia-Valez, 855 F. Supp. at 613.

Because the statement must be made at the time that the event or condition is being perceived or immediately thereafter under Rule 803(1), the Court must determine how long is too long to qualify as "immediately thereafter" in the circumstances presented here. There is "no talismanic time period for admission of a present-sense impression," so admissibility must be determined on a case-by-case basis. See 4 STEPHEN A. SALTZBURG, MICHAEL M. MARTIN & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL 803-17 (11th ed. 2015). In the D.C. Circuit, it is clear that fifteen minutes is too long to satisfy the contemporaneity requirement, but beyond that, there is very little guidance. Compare Hilyer v. Howat Concrete Co., 578 F.2d 422, 426 n.7 (D.C. Cir. 1978) (explaining that an "out-of-court statement made at least fifteen minutes after the event it describes is not admissible"), with Flythe v. District of Columbia, 4 F. Supp. 3d 222, 234 (D.D.C. 2014) (holding a statement admissible when the statement was made within moments or seconds of the event). In this case,

9

the elapsed time between the event perceived – the throwing of the gun – and the anonymous civilian witness' statement was 3 minutes. The Court concludes that the event and the statement were sufficiently contemporaneous to substantiate its reliability. Thus, the anonymous witness' statements qualify as a present-sense impression and may be admitted under Rule 803 as an exception to the hearsay rule.

### III. CONFRONTATION CLAUSE

*A. Legal Standard*

The parties agree that for the statement of the anonymous civilian to be admitted at trial it must meet a hearsay exception – in this case as a present-sense impression – and also not violate Mr. Wills' Sixth Amendment right to confront the witnesses against him. See Mot. at 3; Opp. at 4, 10; Gov't Reply at 1. The government argues that the statements do not implicate the Confrontation Clause because they were non-testimonial in nature. It maintains that there was an emergency perceived by the officers and presumably by the witness – the need to retrieve promptly the gun the witness saw thrown – and the anonymous civilian's statements were made to assist the police in that endeavor, not to assist in arrest and prosecution. See Mot. at 3-6.

The Sixth Amendment confers upon a defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." See U.S. CONST. amend. VI. "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." United States v. Williams, 740 F. Supp. 2d 4, 6 (D.D.C. 2010) (quoting Melendez–Diaz v. Massachusetts, 557 U.S. 305, 309 (2009)); see also Crawford v. Washington, 541 U.S. 36, 53-54 (2004). A declarant is a "witness" within the meaning of the Sixth

Amendment if he or she "bear[s] testimony" against the accused – that is, if he or she makes statements that are "testimonial" in nature. See Crawford v. Washington, 541 U.S. at 51.

A "testimonial" statement is one that is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." See Crawford v. Washington, 541 U.S. at 52. By contrast, a statement is deemed non-testimonial if it was "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." See Davis v. Washington, 547 U.S. 813, 822 (2006). But "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," the statement is considered testimonial. See id.; see also United States v. Arnold, 486 F.3d 177, 187 (6th Cir. 2007) (explaining that a statement is testimonial where circumstances "objectively indicate" that the "primary purpose of the interrogation is to establish or prove events potentially relevant to later criminal prosecution"). Ultimately, a court must decide "whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'" Ohio v. Clark, 135 S. Ct. 2173, 2180 (2015) (quoting Michigan v. Bryant, 562 U.S. 344, 358 (2011)). A statement does not fall within the Confrontation Clause unless its "primary purpose" was testimonial. See id.

*B. Analysis*

The government argues that the statement of the anonymous civilian was not testimonial in nature and therefore need not be subject to cross-examination under the Confrontation Clause. See Gov't Reply at 7. It points out that the civilian spoke first,

spontaneously offering information to the officer about the location of a gun that she saw thrown, and that there was no interrogation by Officer Keleman. See id.; see also Mot. at 5. The government maintains that the primary objective of Officer Keleman and his colleagues was to locate the gun for the protection of the community, not to support a prosecution. See id. The search for the firearm, it asserts, was "unquestionably an ongoing emergency," and thus the statements by the civilian witness were non-testimonial and the Confrontation Clause therefore is not implicated. See Mot. at 4, 6. The government analogizes the officers' "frantic[] search[] for a firearm," to circumstances in which a 911 dispatcher attempts to identify the perpetrator of an ongoing crime. See Mot. at 4.

The existence of an emergency, however, "is not the touchstone of the testimonial inquiry." See Ohio v. Clark, 135 S. Ct. at 2180 (quoting Michigan v. Bryant, 562 U.S. at 374). Rather, whether an emergency exists is only one factor relevant to determining the "primary purpose" of a statement. See id. (quoting Michigan v. Bryant, 562 U.S. at 366). Other factors that may play a role in determining the primary purpose of the interaction between the police and a citizen is whether there was an interrogation by law enforcement and the formality or informality of the situation. See Ohio v. Clark, 135 S. Ct. at 2180; Michigan v. Bryant, 562 U.S. at 366. In addition, "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." See Michigan v. Bryant, 562 U.S. at 367; see also Davis v. Washington, 547 U.S. at 829-30. In this case, those other factors and the conduct and statements of both the anonymous civilian and Officer Keleman fully support the government's position.

The civilian witness voluntarily approached Officer Keleman without any apparent solicitation in a relatively informal setting. She spontaneously offered her statement,

confirmed that statement when Officer Keleman briefly asked one clarifying question, and then quickly terminated the encounter. See, e.g., United States v. Arnold, 486 F.3d at 190 (explaining that the fact that statement was unprompted and not in response to police interrogation "at least suggests that the statement was nontestimonial").[5] This was not the kind of "formal station-house interrogation" that gives rise to the most classically testimonial statements. See Ohio v. Clark, 135 S.Ct. at 2180 (citing Michigan v. Bryant, 562 U.S. at 366). Indeed, the interaction between the two was not an interrogation at all – the declarant's statement was entirely unsolicited and spontaneous. In these circumstances, the Court concludes that the primary purpose of the conversation was to find the gun and remove it from the apartment complex, not to obtain information potentially relevant to a criminal prosecution. The anonymous civilian's statements therefore were "non-testimonial" and may be admitted consistent with Mr. Wills' rights under the Confrontation Clause.

---

[5] Officer Keleman asks one clarifying question between the declarant's statements. The BWC footage shows that the civilian says "He threw it in the bushes. I was sitting there watching." Officer Keleman asks "You saw the bushes?" And the anonymous civilian responds "He threw it to the right. Don't talk to me." See Mot. Ex. 4.

13

## IV. CONCLUSION

For all of these reasons, the Court granted the government's motion in limine to admit an eyewitness statement as a present-sense impression by separate order [Dkt. No. 43] dated December 12, 2018

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 12/21/18